19582

Linnie SUTCLIFFE, Respondent, v. Christina SUTCLIFFE, Appellant

(195 S. E. (2d) 113)

*Messrs Clyde C. Dean,* of Orangeburg, and *Hammer and Bernstein,* of Columbia, *for Appellant,*

*Messrs. O. Harry Bozardt, Jr.,* of Orangeburg, and *Kermit S. King,* of Columbia, *for Respondent,* 

March 6, 1973.

BUSSEY, Justice:

This is a child custody proceeding in which the wife appeals from an order of the lower court awarding custody of the five children of the parties to the husband. At the time of the hearing below, in February 1972, the children of the parties were a son aged 17, and four daughters ranging in age from seven to fifteen years. The husband and children were living in a home acquired by the family some two years before, and the wife was living in a rented house with two bedrooms, all in the vicinity of Norway, South Carolina. The husband was working on a rotating shift at Carolina Eastman Co. near Columbia. His father and mother and also an aunt and uncle lived within a couple of hundred yards of his residence, but the children were staying by themselves while he was away at work. The wife was employed by the telephone company in Norway on day work and had a part time bookkeeping job in addition. With the exception of the incident which gave rise to the separation of the parties, the husband conceded that the wife was both a fine and capable mother to the children and a fine wife to him.

On the afternoon of December 6, 1971, the wife was working at the telephone company, part time, having been recently employed. At about 5:15 or 5:30, the husband called her on the telephone and requested her to run an

be home at approximately 6:00 P. M., and when she did not arrive quite so soon as expected, the husband promptly went looking for her. He found her at approximately 6:15 P. M. in her automobile on a dirt road on the edge of a field approximately one hundred yards off Highway 321, in view of the highway, though it was then dusk dark or shortly thereafter. A Mr. Smith was coming out of the road in a pickup truck. Concluding that there was some improper conduct between his wife and Mr. Smith, he, in his own words, "slapped Hell" out of his wife, knocking her to the ground. He contended that he only struck her once, but the evidence is in conflict, and we think it obvious that he struck her more than one blow and that she was painfully and severely beaten and bruised, though fortunately not seriously injured, and not really given any opportunity to explain what she was doing there until after she was beaten. They proceeded home in his car leaving hers and she attempted to explain to him on the way home, but, he did not wish to accept her explanation. She asked him if he wanted her to leave, and he told her yes, to get out, upon which she departed and has not since returned.

Prior to this incident, Mr. and Mrs. Smith and Mr. and Mrs. Sutcliffe had been intimate friends, visiting back and forth in the homes of each other, with Mr. Sutcliffe and Mr. Smith bird hunting together. Some time a month or two prior to this incident, Mr. Smith had loaned to Mrs. Sutcliffe the sum of $700, with which to make a down payment on a lot at Lake Murray. At the time, Mrs. Sutcliffe contemplated going to work and the arrangement was that she would pay Mr. Smith back as she earned it. She testified that Mr. Sutcliffe knew of the loan. He denied knowledge of such, but from his equivocating answers about the lot and his knowledge thereof, we think it clear that he well knew of the lot purchase and most probably of the loan.

The dirt road where Mrs. Sutcliffe was assaulted by her husband leads across an open field to a cow pasture gate, the field and pasture being the property of Mr. Smith. According to her, she had gotten her first pay check that morn-

ing and cashed the same. In driving along the highway she saw Mr. Smith's truck turn into the dirt road and wanting to make him a payment on account, she turned in the road behind him. She followed his truck to the turn around at the cow pasture gate, stopped, got out of her car, went to the truck, paid him $50, and had returned to her car to proceed home when her husband approached. She did not enter the Smith truck, nor did he alight therefrom.

The testimony of Mr. Smith fully corroborated that of Mrs. Sutcliffe in every detail. He further testified that at the time he was returning from checking the land line on some property he was renting from a Mr. Phillips, Mr. Phillips being with him in his truck, and that he had turned into the dirt road for the purpose of making sure that the pasture gate was fastened, Mr. Smith being a dairy farmer. Mr. Phillips also testified and corroborated the testimony of Mrs. Sutcliffe and Mr. Smith. Mr. Sutcliffe admitted that his wife tried to tell him at the time that there was a witness in the truck with Mr. Smith who could vouch for the fact that nothing improper had occurred. She did not then know the identity of the witness as she and Mr. Phillips were not acquainted. It is of real significance that on motion of counsel for the husband, Mr. Sutcliffe, all of the witnesses were sequestered and we fail to observe any variance of consequence in the testimony of Mrs. Sutcliffe, and her witnesses, on any really material point.

According to Mr. Sutcliffe, he saw no one in the pickup truck with Mr. Smith and testified that this headlights shone into the cab as the Smith truck crossed in front of him making a turn in the dirt road. He also testified that Mr. Smith stepped on the gas and got out in a hurry, he feeling certain that Mr. Smith recognized him. Mr. Smith denied speeding up and said that he and Sutcliffe greeted each other but that he did not stop as he had nothing to talk about at the moment and he had no reason to suspect that Sutcliffe was mad about anything. According to Mr. Sutcliffe, Mrs. Sutcliffe's blouse was slightly torn and some buttons off of the

back when he first arrived and she was in the process of straightening up her clothes. According to her, she was not at all disheveled and the damage was done to her blouse when he jerked her out of the car. At least portions of Mr. Sutcliffe's testimony would indicate that he himself did not really believe that there had been any intimacy or other really improper conduct between Mr. Smith and his wife, but that his wife had committed a grievous wrong in simply being there and talking to Mr. Smith at the particular time and place.

In the course of his testimony, he repeatedly expressed his willingness and desire to take his wife back and forgive her for what she had done. Neither his testimony nor attitude indicate to us a willingness on his part, however, to make amends for his own conduct or to give Mrs. Sutcliffe any assurance that the same would not be repeated in the future. Up to the time of the hearing she was not inclined to reconcile, which is at least understandable. As far as the record goes, up until the events of December 6, the parties had had a normal and successful marriage without any difficulty of consequence.

The record is rather voluminous and many details could be added, but the foregoing narrative is, we think, a fair resume of the highlights of the evidence. Although the only issue herein is the custody of the children, for the most part the record contains evidence tending to establish fault or lack of fault on the part of the respective parties, with only a minimal amount of evidence bearing on what is truly in the best interests of the children involved. While the lower court concluded that the best interests of the children would be served by awarding custody to the father, the decree did not set forth the salient facts upon which it was based, as is required by Rule 13 of the Family Court Rules.

The court concluded that the wife was guilty of misconduct (with Mr. Smith) which would justify the conduct of the husband and that such misconduct on

her part would "disqualify her from being given custody" of the minor children of the marriage. There is no factual finding, however, as to just what the "misconduct" on the part of the wife consisted of, and, in any event, such conclusions or findings on the part of the lower court are, in our view, against the clear preponderance of the evidence. Even if the testimony of the wife and her witnesses be entirely discounted, the testimony of the husband would prove no immoral conduct on the part of the wife, and at the most prove nothing more than an impropriety or indiscretion on part sufficient to give rise to some suspicion unless satisfactorily explained. Such would neither justify the brutal conduct of the husband nor disqualify her to have the custody of the children. The lower court also apparently concluded that the failure to effect a reconciliation between the parties rested solely on the shoulders of the wife. We do not think any such inference or conclusion is warranted by the evidence.

When the decree is stripped of these erroneous conclusions, the basis for the court's ultimate conclusion that custody should be awarded to the husband is, to say the least, obscure. Furthermore, this Court would not be warranted in deciding the custody of the children on the basis of the present record. The judgment below is reversed for failure to comply with Family Court Rule 13, and the cause remanded for reconsideration of the question of what is for the best interest and welfare of the minor children. Upon remand, all parties shall be entitled to be fully heard but the evidence should be restricted to matters bearing on what is truly in the best interests of the children. Questions of fault or lack thereof on the part of the respective parents prior and leading to their separation and already fully litigated herein should not be further considered or relitigated.

Reversed and remanded.

Moss, C. J., and Lewis, Brailsford and Littlejohn, JJ., concur.